*469 Opinion of the Court, by
Judge Mills.
Under sundry executions, some in favor of Samuel Brents, one of the plaintiffs in error, and others under his control belonging to other individuals, a constable seized and sold a negro woman, as the property of Valentine Meriwether. At the sale, Charles P. Cabiness, another plaintiff in error, appeared and set up claim to part of the negro, alleging that he had previously purchased the negro for Meriwether, and paid for her in part with the money of Meriwether, and in part with his own, and that he had a lien upon the slave for the part of the price paid by himself. The sale, however, progressed, and the negro was bid off for Samuel Brents, but by and in the name of Thomas S. T. Moss, who took her home to his house; but, on the same day, Cabiness took her, without leave, and carried her to his house in the country, still claiming her. For this taking and detention, Samuel Brents brought his action at law, in the name of Moss, to recover the negro or her value. Pending this suit, and about two weeks alter Cabiness took her into possession, he sold the negro to William Herndon, the defendant in error, who required that the claim of Samuel Brents, acquired under the sale by execution, should be extinguished. Brents, on being applied to, agreed to compromise, and dismiss his suit against Cabiness, on being paid and secured his price bid for the negro at the constable’s sale, and a few dollars more for his trouble and expence, and to relinquish his claim to the negro. Herndon accordingly executed his note to Brents, with Cabiness as his security, for the sum of two hundred dollars, and also his note to Cabiness for one hundred and twenty-five dollars, making the price of the negro to be three hundred and twenty-five dollars; and Brents joined with Cabiness, for the purpose of relinquishing his title, in a bill of sale warranting the title only, and the negro was to be delivered, in a day or two, to Herndon. When she was actually delivered or sent to Herndon, she was sick, and he, after her being at his house one night, *470 would not receive her, but turned her off, and she wandered about until she ultimately came to the kitchen of some other person, where she died.
Contract for the sale of a slave vacated in equity, on account of misrepresentations as to her health.
Where the property has not been tendered to the purchaser, within the time stipulated by the contract, but is sent after-wards, and is so unsound as to justify his refusal to receive it, if sent within the time, he is not bound either to return or to offer to return it, as a condition of sustaining a bill to vacate the contract.
Samuel Brents assigned his note to Joshua Brents and Moss, partners in trade, for a valuable consideration, who, when they applied for payment, were told that the note was given for an unsound negro, and that it would not he paid. They immediately brought suit on the note, and recovered judgment; to be relieved against which, Herndon filed his bill, making Samuel Brents, Cabiness, and Moss and Brents parties, and craving relief by a rescision of the contract, a perpetual injunction against the judgment, and that his remaining note given to Cabiness, which he alleges was assigned to Brents and Moss, and they had not yet commenced suit on it, might be given up to be cancelled. He charges both Samuel Brents and Cabiness with committing a fraud upon him in the sale of the negro, by representing her to he sound, when she was unsound, within their knowledge, at the date of the sale to him; and also, with having artfully concealed the ill health of the negro, being well apprised of it.
Samuel Brents denies any representation about the health or ill health of the negro, or that he knew any thing concerning her health, and alleges he had never seen her but once, and that at a distance. He denies that he sold her, or that the part price of the slave made the consideration of the note as to him, and alleges that the compromise of the suit he had brought against Cabiness for the slave, was the true consideration. He further denies that he sold the slave, or had any thing to do with the contract between Cabiness and Herndon, except joining in the bill of sale with Cabiness, for the purpose of relinquishing his claim, to satisfy Herndon.
Cabiness, in his answer, does not expressly deny the representation of soundness in the slave, or that she was unsound. He alleges she was sick, and that Herndon knew it before he bought her, and was acquainted with the fact of her being diseased; and that Herndon after he had bought and received her, turned her out mercilessly, in the inclement season of winter, and that she wandered from house to house, until she died through Herndon’s inhumanity, when she might have been cured.
*471 Brents and Moss, the assignees of the note given to Samuel Brents by Herndon and Cabiness, deny any personal knowledge of the dealings with regard to the slave, or consideration of the note, and on this refer to the answers of their co-defendants. They allege, that after they had obtained their judgment at law, and the sheriff was pressing the execution for the money, the complainant below applied to them for a suspension of the execution for a number of months, and promised, unconditionally, to pay it, if the time was given; to which they agreed, and gave the time accordingly. After its expiration, the complainant applied for, and obtained further time; and at last, after all this, resorted to his injunction.
The court below perpetuated the injunction on the judgment at law, and directed the contract to be rescinded, as to the negro. To reverse that decree, this writ of error is prosecuted.
Notwithstanding the equity alleged in the bill against Samuel Brents and Cabiness, we should be of opinion, even assuming that equity to be proved, that the complainant below would not be entitled to relief against the judgment at law obtained in favor of Moss and Brents, on the note assigned to them by Samuel Brents. It is shown by uncontroverted testimony, that while the sheriff was pressing the execution in favor of Brents and Moss, on the judgment in question, the defendant in error did engage, unconditionally, to pay the money, if time was given until a day fixed upon by himself, and that in consequence of the agreement, the execution was stayed and the time given. On such an agreement an action would lie at common law, and the forbearance has been held a good consideration to support the action. Such an agreement and consideration ought to be deemed sufficient to bar the complainant of any relief in equity resulting from a vitious consideration of the note, against the assignees, who, by their forbearance, jeopardized their recourse against the assignor. It is true, that such an equity would follow the note in the hands of the assignees, by the statute permitting the assignment; but it is equally true, that that equity, like many others, may be forfeited and barred by the improper conduct of its holder; and conduct such as that of the complainant below, has been frequently held sufficient to bar relief against the as *472 signor. The decree, therefore, so far as it enjoined the judgment at law, is deemed erroneous.
The next inquiry is, can the complainant below, on being compelled to pay the money in question to Brents and Moss, be entitled to recover the amount over against Samuel Brents? It is not shown that Samuel Brents had any knowledge of the unsoundness of the negro, or that he represented her health to be good. Besides, it is evident that he had no hand in making the contract with Herndon, except uniting in the bill of sale to relinquish his title, and the acceptance of the note for his claim, and that Cabiness in truth and in fact made the contract. Samuel Brents and Cabiness were not the joint owners of the slave, or partners in interest. They both had a claim to the same slave, adverse to each other, and had resorted to law to try its validity. Depending this controversy, Herndon undertook to purchase the claim of both, and made his bargain with Cabiness, the possessor, to give a certain sum, if Brents’ title could be extinguished, and Brents agreed to surrender his claim, on a certain amount being secured to him. This was done, and he made no representations, false or fraudulent, and was guilty of no reprehensible concealment of the condition of the slave, with which he did not appear to be acquainted. As between him and Cabiness, the consideration of the note was the dismission of the suit between them, and settlement of the controversy. As between him and Herndon, the consideration was the extinguishment of his claim on the slave, whose quality and situation he did not warrant, misrepresent or conceal. Under such circumstances, we conceive that he may equitably be allowed to retain his advantage at law, and cannot be made responsible for a fraud of which he was not morally guilty; and that, if the complainant below is entitled to any redress, it must be against Cabiness, with whom he dealt. This leads to the inquiry, what redress the complainant below ought to have against Cabiness.
As before stated, there is no direct denial of representation of the soundness of the negro in his answer, and there is an admission of her sickness, and assertion that the complainant below knew it. It does appear that at the constable’s sale, which was about two weeks before the sale of Cabiness to Herndon, the negro did *473 represent herself to be sick, in the hearing of the complainant; but in such a way as might leave the impression that her complaints were affectation, to prevent her being sold where she did not like. There is also some proof conducing to show that Herndon did not regard much her sickness, and that he designed her immediate market. But there is the positive testimony of one witness, uncontradicted, that Cabiness, at the time of the sale, did say that she had been sick, but that she had got well, and was as fine a cook as any in the country. It is further shown that the negro was at the time really ill, and that she was worse than the complainant below supposed, even if he was informed of her unsoundness. These circumstances appear to fix on Cabiness an insincerity in the contract, which may subject him to redress at the suit of the complainant in error, and against him alone the relief must be had, if granted at all. The inquiry then arises, can the complainant below obtain that relief in this suit? For frauds of this kind there is a well known remedy at law, in which the person injured may recover to the value of the thing sold, with consequential damages, or less than the value, according to the real injury and extent of the fraud; and the principle is too well established, to be now questioned, as a general rule, that equity will not give redress where the law affords a correspondent remedy. Consequently, equity will not entertain jurisdiction for the purpose of first liquidating and decreeing damages for the deficiency in a chattel sold, when represented to be good; nor will it, in general, enjoin the note given as the consideration of such chattel, and apportion the price, by reducing it from that stipulated by the parties, to what it is really worth, and then set off the difference against the price. On the contrary, equity will assume and exercise jurisdiction for the purpose of setting aside a contract of this nature, especially when part of the contract has not been performed. But, to authorise this assumption, it is necessary that the vendee should tender back, or offer to restore the property, if he has accepted it, so soon as the fraud is discovered; or, in case the article, from its sickness or its death, cannot be restored or offered back, such restoration may be excused, and equity will entertain jurisdiction, in case the article has been of no use to the vendee, or in case it has not been accepted *474 by him. The question then is, to which of these classes does the present case belong? Is it a case where the complainant below is entitled to an uncertain recovery, which may be the price stipulated; or is he entitled to a restoration of the whole price, as he cannot now restore the negro? Or has he ever so accepted the negro, as to bind him to restore?
The negro in this case was not delivered to Herndon until two or three days after the time when she was to have been delivered, when she was sent to his house, where he had her inspected by a physician, and then, on the same day or next morning, dismissed her. This was about the tenth of January, and some time in the month of February following, she died in the kitchen of John Moss, into which she crept for shelter, half naked and starved, and where she remained four or five days. It was in the option of Herndon, whether to receive her or not, at the time she was sent. If he had received her, it would have waived the failure of the delivery at an improper time. This, however, he does not appear to have done. Influenced by the discovery that the slave was more unsound than he had apprehended, and having it then in his power either to accept or reject her, he determined on the latter; and as Cabiness did not make the delivery in person, but did it by sending her, Herndon took the same means of sending her off. And although we cannot approve the want of humanity, in sending her out, when diseased, at so inclement a season; yet, as she was not his, and Cabiness had taken that mode of sending her there, Herndon, as far as Cabiness was concerned, however inhumanly he may have behaved towards the slave, we conceive, is entitled to a rescision of the contract; especially, as he has a note out, given to Cabiness for part of her price, against which he may ask, and is entitled to relief. We, therefore, do not conceive that the case is one where Herndon is entitled to a partial recovery of damages only, nor yet a case of an offer to rescind, by restoration of the slave; but a case where the contract was not completed by an acceptance of the slave, and where he had never received the slave, and for good reasons refused to receive her. And as he has a note out, against which he is entitled to redress, although we conceive him entitled to no redress against Samuel Brents or the judgment of Moss and Brents, he is, against the note given to Cabiness.
*475 The decree must, therefore, be reversed with costs, and the cause remanded, with directions to dismiss the bill with costs, as to Samuel Brents; to dissolve the injunction, with damages, as to Moss and Brents, and to decree the note given, to Cabiness himself, to be delivered up; and that Herndon recover of Cabiness the amount of the note given to Samuel Brents, with the interest from the time it became due.